ALEXANDER S. RUSNAK, Bar No. 300054
JENNIFER L. RUSNAK, Bar No. 247054
RUSNAK LAW OFFICE
1001 Molalla Ave. Suite 221
Oregon City, OR 97045
Telephone: (408) 780-9835
Facsimile: (408) 351-0114
Arusnak@rusnaklawoffice.com
Jrusnak@rusnaklawoffice.com

Attorneys for Plaintiffs MELANIE L. BALAJADIA,
BRIAN M. BADIOLA, MAY C. CABACUNGAN,
 and VICTOR TURINGAN

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELANIE L. BALAJADIA, *et al.* | Case No. 5:21-cv-00616-NC |
| Plaintiffs, | |
| v. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPROVING SETTLEMENT OF FLSA AND PAGA CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| HELPING HANDS RESIDENTIAL CARE HOME, INC.; *et al.* | |
| Defendants. | [Filed Concurrently with Declaration of Alexander S. Rusnak and Proposed Order] |
| | Date: December 1, 2021 Time: 1:00 p.m. Courtroom: 5 Judge: Honorable Nathanael M. Cousins |
| | Complaint Filed: January 26, 2021 FAC Filed: March 8, 2021 |

## NOTICE OF MOTION AND MOTION

TO DEFENDANTS HELPING HANDS RESIDENTIAL CARE HOME, INC.; JTCN, INC.

DBA HELPING HANDS FOR CHILDREN; ROWENA CALING NGUYEN; AND THANH

NGUYEN

1

PLEASE TAKE NOTICE, on December 1, 2021, at 1:00 p.m. or as soon thereafter as counsel may be heard, in Courtroom 5 of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113, Plaintiffs MELANIE L. BALAJADIA, BRIAN M. BADIOLA, MAY CLAIRE CABACUNGAN and VICTOR TURINGAN (collectively "PLAINTIFFS") will and hereby do move this Court for an Order approving the settlement of PLAINTIFFS' claims under 29 U.S.C. §§ 206, 207 and 216(b) of the Fair Labor Standards Act and California's *Labor Code* § 2698 *et seq*., Private Attorney Generals Act of 2004 under the terms of the Settlement Agreement.

This Motion is based upon this notice, the attached memorandum of points and authorities, the declaration of Alexander S. Rusnak and attached exhibits and the Court's file, and such oral and documentary evidence as may be presented at the hearing on this Motion.

Respectfully Submitted,

October 27, 2021                                    RUSNAK LAW OFFICE

_____
Alexander S. Rusnak
Counsel for Plaintiffs

**MEMORANDUM OF POINTS AND AUTHORITIES**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  <u>INTRODUCTION</u>

Plaintiffs Melanie L. Balajadia, Brian M Badiola, May Claire Cabacungan and Victor Turingan, (collectively "Plaintiffs") seek the approval, pursuant to *Labor Code* § 2699(l), of a settlement of Plaintiffs' claims under *Labor Code* § 2698 *et seq.*, California's Private Attorneys General Act ("PAGA") and 29 *U.S.C.* §§ 207, 216(B), and 255(A) of, the Fair Labor Standards Act arising from allegations of Defendants Helping Hands Residential Care Home, Inc.; JTCN, Inc. dba Helping Hands for Children; Rowena Caling Nguyen; and Thanh Nguyen (collectively "Defendants") failing to pay wages for all hours worked, overtime premiums, failure to reimburse expenses, failures to pay premium wages for failure to premium pay for failures to provide complaint rest breaks and meal periods, and wrongfully terminating Plaintiffs. A major factor relevant to Plaintiffs' claims is that Defendants issued separate paycheck for work performed at JTCN, Inc.'s facility and for work performed at Helping Hands Residential Care Home, Inc. facilities and not paying overtime based upon the <u>total hours worked for both facilities</u>. For the reasons below, Plaintiffs, respectfully request that the Court approve the Settlement Agreement agreed to by the Parties.

## II.  <u>FACTS AND PROCEDURAL HISTORY</u>

On December 29, 2020, Plaintiffs filed a notice with the Labor & Workforce Development Agency ("LWDA") asserting that Defendants violated several provisions of California's *Labor Code*. (*Declaration of Alexander S. Rusnak in Support of Plaintiff's Motion for Order Approving Settlement of Labor Code § 2698 et seq. (PAGA) Claims.* ("*Rusnak Decl.*") ¶ 4 Exhibit B.) The LWDA did not respond to Plaintiffs' notice.  (*Id.*)  On January 26, 2021, Plaintiffs filed a civil complaint with this Court, alleging individual violations of 29 *U.S.C.* §§ 207, 216(B), and 255(A) of the Fair Labor Standards Act and analogues violations California's *Labor Code*. (*Rusnak Decl.* ¶ 5.) On March 8, 2021, Plaintiffs filed a First Amended Complaint on March 6, 2019, to include a cause of action under PAGA for violations that Plaintiffs and other aggrieved employees suffered by Defendants, as the LWDA did not respond to Plaintiffs December 29 Notice.  (*Rusnak Decl.* ¶¶ 4,6.)

Through the course of litigation, the parties have exchanged initial disclosures, propounded and responded to written discovery. (*Rusnak Decl.* ¶¶ 7-9.)  Upon review of initial disclosures, discovery responses that included time and pay records for other employees of Defendants, Plaintiffs established a damages model for Plaintiffs claims. (*Rusnak Decl.* ¶ 14.)  The Defendants pay and time records show that Defendants paid Plaintiffs, when they terminated Plaintiffs, made substantial "catch-up" payments to Plaintiffs. (*Id.*) These "catch-up" payments, while untimely, were sufficient to cover overtime premiums owed under the FLSA. (*Id.*) At mediations, Plaintiffs claims revolved around 1) liquidated damages under the FLSA for untimely payment of overtime wages; 2) overtime premiums owed under the Labor Code; 3) premiums for failing to provide compliant rest breaks and meal periods; 4) damages for non-compliant wage statements under Labor Code §226; 4) failure to reimburse expenses incurred for the use of personal vehicles or ride share services; 5) back wages for wrongful termination; and 5) PAGA penalties relating to the above alleged *Labor Code* violations.

The Court directed the parties to mediation and appointed Jeffrey Wohl as mediator (*ECF* 29-30.)  The parties attended mediation on September 24, 2021. via video conference. At the end of mediation, the parties reached the proposed resolution before this Court. (*Rusnak Decl.* ¶ 11).

At the time of mediation, records indicate that another individual worked at both the JTCN, Inc.'s facility and at Helping Hands Residential Care Home, Inc. facilities. (*Rusnak Decl.* ¶ 31). For Plaintiffs and the other aggrieved employee who worked at both facilities, for a total of five (5) employees over the course of the year[1]. (*Id.*)As discussed below in further detail, the most tenable PAGA claims were violations of Labor Code §§ 204 (failing to pay all wages due at least twice per month); 510 (overtime in excess of eight hours in a day, forty hours in a week; double overtime in excess of twelve hours in a workday), 558 (general penalty for violation of regulations regarding work hours under the Labor Code or an order from the Industrial Welfare Commission), and 2802 (failure to reimburse for expenses incurred while performing job duties). For the five employees, the maximum civil penalties that could be assed for the afore mentioned violations amount to $8,400.00 each, for a total of $42,000.00.[2] (*Rusnak Decl.* ¶¶ 31-33).

---

[1] As PAGA claims seek civil penalties, the statute of limitations for PAGA claims is one year.

[2] For full transparency, for all claims asserted under PAGA for the five workers who worked for both corporate defendants,

2

Plaintiffs have filed copies of the civil complaint with PAGA claims and a copy of the proposed settlement agreement with the LWDA. (Rusnak Decl. ¶ 2).

### III. THE SETTLEMENT AGREEMENT

#### A.  SETTLEMENT FUNDS

Defendants will pay One Hundred and Fifteen Thousand Dollars (Two Hundred and Fifteen Thousand and Twenty-Seven Dollars and Thirty-Four Cents ($115,000.00) in wages, penalties, attorneys fees and costs.  The settlement agreement provides that the above amount allocated below.

#### 1.  PLAINTIFFS INDIVIDUAL CLAIMS:

Sixty-Four Thousand Seven Hundred and Sixteen Dollars ($64,716.00) is to be allocated to Plaintiffs individual claims for liquidated damages under the FLSA, premiums for unpaid overtime, and reimbursement of expenses incurred. The table below reflects the distribution of the $67,716.00 amongst the individual Plaintiffs, their total claim asserts, the FLSA Claim, the relative recovery of their total claim. (*Rusnak Decl.* ¶29-30).

| PLAINTIFF | AMOUNT ALLOCATED | TOTAL CLAIM | FLSA CLAIM[3] | % Of TOTAL CLAIM |
|---|---|---|---|---|
| Melanie L. Balajadia | $18,400.48 | $76,224.15 | $16,091.71 | 24% |
| Brian M. Badiola | $18,400.48 | $70,663.87 | $19,490.00 | 26% |
| May Claire Cabacungan | $15,114.68 | $60,177.67 | $8,124.40 | 25% |
| Victor Turningan | $13,000.00 | $54,304,53 | $8,767.00 | 24% |
| TOTAL | $64,716.00 | $207,065.69 | $52,473.11 | |

#### 2.  PAGA PENALTIES

Ten-Thousand Dollars ($10,000.00) is allocated penalties under PAGA, with Seven Thousand

---

regardless of strength of claims (retaliation, missed meal periods and rest breaks, inaccurate wage statements, etc.) the individual PAGA penalties would amount to $19,750 per Plaintiff and $11,300 for the other aggrieved worker, for a total of $90,300.00.

[3] FLSA liquidated damages for untimely payment of overtime wages.

3

Five Hundred Dollars ($7,500), 75% of the penalties, going to the LWDA ($7,500) and Two Thousand Fiver Hundred Dollars, 25% of the penalties going to the aggrieved workers, which include the Plaintiffs and an additional worker, divided equally.

| AGGRIEVED EMPLOYEE | AMOUNT | LWDA SHARE | EMPLOYEE SHARE |
|---|---|---|---|
| Melanie L. Balajadia | $2,000.00 | $1,500.00 | $500.00 |
| Brian M. Badiola | $2,000.00 | $1,500.00 | $500.00 |
| May Claire Cabacungan | $2,000.00 | $1,500.00 | $500.00 |
| Victor Turningan | $2,000.00 | $1,500.00 | $500.00 |
| Other Employee | $2,000.00 | $1,500.00 | $500.00 |
| **TOTAL** | **$10,000.00** | **$7,500.00** | **$2,500.00** |

As for the other identified aggrieved employee, their $500.00 share of the PAGA penalties will be disbursed by Plaintiffs' counsel with the aid of Defendants' counsel.

**3. ATTORNEYS FEES AND COSTS**

Thirty-Nine Thousand Two Hundred and Eighty-Four Dollars ($39,284.00) of the above amounts is allocated to attorneys fees and costs.

**IV. ARGUMENTS TO SUPPORT APPROVAL OF THE SETTLEMENT AGREEMENT**

**A.    THE COURT SHOULD APPROVE THE SETTLEMENT OF PLAINTIFFS' PAGA CLAIMS.**

"An employee bringing a PAGA action does so as the proxy or agent of the state's labor law enforcement agencies, ... who are the real parties in interest." *Sakkab v. Luxottica Retail N. Am. Inc., 803 F.3d 425, 435* (9th Cir. 2015) (internal citations omitted). Thus, "[a]n action brought under the PAGA is a type of *qui tam action*." *Id*. at 429.  As a PAGA action is brought as a proxy for law enforcement agencies, the Court is not required to certify a PAGA claim as it would under F.R.C.P. Rule 23. *Villalobos v. Calandri Sonrise Farm LP*, 2015 WL 12732709, at *5 (C.D. Cal. July 22, 2015).  A settlement of PAGA claims compromises a claim that could otherwise be brought by the state, and as such the "court[s] shall review and approve any settlement of any civil action filed pursuant to [PAGA]." *Cal. Labor Code* § 2699(l)(2).

4

*Cal. Labor Code* § 2699(e)(2) requires any party seeking approval of a PAGA settlement the proposed settlement to the LWDA to permit the LWDA to comment, should it choose to. Further, PAGA provides that courts have the discretion to lower the amount of civil penalties awarded "if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." *Cal. Labor Code* § 2699(e)(2).

PAGA does not establish a standard for evaluating PAGA settlements. The LWDA has stated that "[t]he LWDA is not aware of any existing case law establishing a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action." *Ramirez v. Benito Valley* Farms, LLC, 2017 WL 3670794, at *3 (N.D. Cal. August 25, 2017) (quoting LWDA Response at 3, *O'Connor v. Uber Techs*., No. 13-CV-03826-EMC, Docket No. 736 (N.D. Cal. July 29, 2016)). Ultimately, "neither the California Supreme Court, nor the California Courts of Appeal, nor the [LWDA] has provided any definitive answer as to what the appropriate standard is for approval of a PAGA settlement." *Haralson v. U.S. Aviation Servs. Corp*., 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (quoting *Jordan v. NCI Grp., Inc*., 2018 WL 1409590, at *2 (C.D. Cal. January 5, 2018)).

Given the lack of express standards in approving the settlement of PAGA claims, courts often utilize serval of the factors set forth in *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998), notably (1) strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the extent of completed discovery; and (4) the expertise and views of counsel. *O'Connor v. Uber Techs*., 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016).

## 1. The PAGA Settlement is Not Unjust, Arbitrary and Oppressive, or Confiscatory as to Defendants.

The Parties reached the above settlement through the aide of an experienced mediator appointed by the Court through the Court's ADR process. As stated above, the PAGA civil penalties allocated and agreed to by the parties amounts to $10,000.00. The maximum penalties for the key Labor Code violations discussed above amounts to $42,000.00. The PAGA penalty recover amounts to almost 24% of that amount.[4]

---

[4] $10,000.00 of the possible maximum of $90,300.00 for all penalties regardless of strength, represents an 11% recovery of

**MEMORANDUM OF POINTS AND AUTHORITIES**

## 2. Plaintiffs' Claims.

Legal uncertainty at the time of settlement favor approval of a settlement. *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *10 (N.D. Cal. November 16, 2007). As stated previously, upon Plaintiffs' termination by Defendants, Defendants paid Plaintiffs what they believed were the amounts of unpaid overtime premiums owed. Based upon Plaintiffs' counsel's review of time and pay records, under the FLSA, Defendants' final payment was sufficient pay unpaid overtime premiums owed to Plaintiffs, and then some. The main deficiency, as to wages owed--in the eyes of Plaintiffs--were overtime premiums owed to Plaintiffs under California's Labor Code, particularly the requirement for double-overtime hours worked in a workday in excess of twelve hours.

As to the PAGA claims, there is exists a strong dispute between the parties as to whether Defendants provided Plaintiffs and other aggrieved employees with compliant rest breaks and meal periods. As Defendants operate 24-hour care facilities for both children under the age of 18 (JTCN, Inc.) and the elderly (Helping Hands Care Homes, Inc.), Wage Order 5-2001 provides alternate requirement for rest breaks and meal periods in these environments.

In regard to Rest Breaks Wage Order 5-2001, Section 12(C) provides:

> However, employees with direct responsibility for children who are under 18 years of age or who are not emancipated from the foster care system and who, in either case, are receiving 24 hour residential care and employees of 24 hour residential care facilities for elderly, blind or developmentally disabled individuals may, without penalty, require <u>an employee to remain on the premises and maintain general supervision of residents during rest periods if the employee is in sole charge of residents</u>. Another rest period shall be authorized and permitted by the employer when an employee is affirmatively required to interrupt his/her break to respond to the needs of residents. (<u>emphasis added</u>)

In regard to Meal Periods, Wage Order 5-2001, Section 11(E) provides:

> Employees with direct responsibility for children who are under 18 years of age or who are not emancipated from the foster care system and who, in either case, are receiving 24 hour residential care, and employees of 24 hour residential care facilities for the elderly, blind or developmentally disabled individuals <u>may be required to work on-duty meal periods without penalty when necessary to meet regulatory or approved program standards and one of the following two conditions is met</u>:
>
> (1)(a) The residential care employees eats with residents during residents'

maximum civil penalties.

1

2

meals and the employer provides the same meal at no charge to the employee; or

3

(2)(b) The employee is in sole charge of the resident(s) and, on the day shift, the employer provides a meal at no charge to the employee. (emphasis added)

4

5

### 3. The Risk, Expense, Complexity and Likely Duration of Further Litigation Favor Settlement.

6

7

Litigating this matter further, as it relates to the asserted PAGA claims, would involve further

8

individual inquires with numerous current and former employees regarding their meal periods and rest

9

breaks. Such and inquiry would still not substantively resolve the common burden regarding California

10

rest break and meal period regulations; was a rest break provided by an employer but simply not taken

11

by an employee; or did the employer fail to provide or prohibit such breaks. Further, given the alternate

12

rest break and meal period regulations in place for 24-hour care facilities, such as Defendants, the risks

13

for Plaintiffs are a consideration. (*Rusnak Decl*. ¶ 34).

14

Further, Plaintiffs *Cal. Labor Code* § 2802 claims for failing to reimburse expenses incurred,

15

which are derived from the use of personal vehicles or paying rideshare services, such as Uber and Lyft,

16

to travel from a JTCN, Inc. facility to a Helping Hands Residential Care Home, Inc. facility and the

17

argument that those two corporations are essentially the same employer. Should a trier of fact find that

18

they were the same employer, such expenses would likely be subject to reimbursement. Should they be

19

found to be distinct enough to be viewed as separate employers, such expenses would likely not be

20

subject to reimbursement.

21

Aspects of Plaintiffs claims under *Cal. Labor Code* for failing to pay overtime, including double

22

overtime, are similarly reliant on a finding that the two corporate defendants and their affiliated facilities

23

be viewed as alter egos of each other and effectively a single employer of Plaintiffs and other aggrieved

24

employees.

25

Plaintiffs' claims under *Labor Code* §226 are highly disputed by Defendants. Plaintiffs asserted

26

that Defendants did not provide wage statements under *Cal. Labor Code* § 226 as Plaintiffs and

27

aggrieved employees were provided separate wage statements for work performed at from a JTCN, Inc.

28

facility and for work performed at Helping Hands Residential Care Home, Inc. facilities. While the wage

7

statements, for the most part, showed the total hours worked for each corporate defendant and the employee's regular rate of pay. However, the wage statements failed to show the Plaintiffs and other aggrieved employees overtime rate of pay and the number of hours worked at the applicable overtime rate of pay. Again, this claim is similarly reliant on a finding that the two corporate defendants and their affiliated facilities be viewed as alter egos of each other and effectively a single employer of Plaintiffs and other aggrieved employees.

Finally, Plaintiffs' claims for retaliation for addressing Defendants *Labor Code* violations under *Labor Code* § 98.6, by terminating Plaintiffs, is also hotly debated. Plaintiff asserts that Defendants terminated Plaintiffs when they raised issues regarding rest breaks, meal periods and overtime payments and subsequently heard "through the grapevine" that Plaintiffs sough legal counsel as to these issues. Defendants assert that Plaintiffs were terminated for "job abandonment" as Plaintiffs would no show up for work, as another worker tested positive for Covid-19, and Plaintiffs absence created a hardship on Defendants.

### 4. The Opinion of Plaintiff's Counsel

Plaintiffs' counsel are experienced in wage-and-hour claims and PAGA claims, has acted in good faith and represented their clients' best interest in reaching the Settlement Agreement. The compromises made, based upon Plaintiffs' counsels' experience are proportional to the likelihood of succeeding weighted against the anticipated costs of continued litigation with value of a prompt resolution for all parties. Plaintiffs counsel has six years of experience litigating wage and hour claims, including PAGA claims. (*Rusnak Decl.* ¶¶ 15-17). It is Plaintiffs' counsels opinion, based upon past experience, that the resolution reached, as to both individual and representative claims under PAGA represent a normal compromise based upon the risks of success at trial, including the amount of any judgement awarded; the anticipated costs of continued litigation; and the value of an immediate resolution.

### B. __PLAINTIFFS INDIVIDUAL FLSA SETTLEMENT SHOULD BE APPROVED.__

Under the FLSA, Plaintiffs may recover liquidated damages over three years for overtime or minimum wage violations. *See* 29 U.S.C. § 216(b) ("An employer who violates the provisions of

8

section 206 or section 207 shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.") The liquidated damages are mandatory unless the employer establishes both subjective and objective good faith in its violation. *See* 29 U.S.C. § 260.

Further, liquidated damages are still owed should an employer eventually pay an employee the minimum wage or overtime owed. *See Briggs v. Wilson*, 1 F.3rd 1537 (9th Cir 1993). Essentially, an employer cannot decide to pay wages months down the road and escape liability under the FLSA for liquidated damages. In the case at hand, the only FLSA that remained was for liquidated damages.

Because an employee cannot waive claims under the FLSA, those claims may not be settled without supervision of either the Secretary of Labor or a district court. *See Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dept. of Labor, Emp't Standards Admin., Wage & Hour Div*., 679 F.2d 1350, 1352-53 (11th Cir.1982).

*Lynn's Food Stores* indicates that, in reviewing a FLSA settlement, a district court must determine whether the settlement represents a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores* 679 F.2d at 1353-55. A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability as there must be "some doubt ... that the plaintiffs would succeed on the merits through litigation of their [FLSA] claims." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016).

As discussed above, there is a bona fide dispute as to whether Defendants two corporations and affiliated facilities are, in fact, are alter egos of each other and should be viewed as a single entity that employed Plaintiffs, thus Plaintiffs' total weekly hours between the two facilities should summed together for overtime calculation or if the two corporations are two separate employers and such hours should not be combined for overtime determination.

In the case at hand, all Plaintiffs most Plaintiffs will receive an amount sufficient pay the full amount or nearly full amount of calculated liquidated damages under the FLSA. Additionally, each of the Plaintiffs asserted additional claims under state law, including wrongful termination. Plaintiffs distribution reflects a compromise that factors in both FLSA claims and state claims. For the reason

above the Court should approve the parties settlement of Plaintiffs' FLSA claims.

### C. The Court Should Approve the Allocation of Settlement Funds for Attorneys Fees and Costs.

29 U.S.C. § 216(b) of the FLSA and California *Labor Code* §§ 2802, 218.5, 226(e), 1194, and 2699(g) provide for the recovery of reasonable attorneys fees and costs for a prevailing employee. Plaintiffs have made a considerable net monetary recovery in both their individual claims against Defendants and in their representative capacity on behalf of the State of California in their PAGA claim. Plaintiffs' counsel represented Plaintiffs on a contingent basis and advanced all costs associated with litigation.

Counsel's contemporaneous time records report the following hours worked and total expenses. While the amounts allocated to attorneys fees and costs in the proposed settlement is less than the reported Loadstar, and for transparency, the amount equates to 33 1/3% of the gross settlement amounts. (*Rusnak Decl.* ¶ 15-24).

| ATTORNEY | RATE | HOURS | Total |
|---|---|---|---|
| Alexander S. Rusnak | $350.00 per hour | 108.0 | $37,800.00 |
| Jennifer L. Rusnak | $450.00 per hour | 10.8 | $4,860.00 |
| Costs | | | $989.78 |
| **TOTAL** | | | **$43,649.78** |

As such, Plaintiffs ask the Court to approve the allocation of $39,284.00 from the settlement funds for attorneys fees and costs incurred.

## V. <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs request that the Court approve the settlement of Plaintiffs individual FLSA claims and the PAGA settlement as outlined in the Settlement Agreement.


Respectfully Submitted,

RUSNAK LAW OFFICE

October 27, 2021

_____
Alexander S. Rusnak
Counsel for Plaintiffs

10