ALEXANDER S. RUSNAK, Bar No. 300054
JENNIFER L. RUSNAK, Bar No. 247054
RUSNAK LAW OFFICE
1001 Molalla Ave. Suite 221
Oregon City, OR 97045
Telephone: (408) 780-9835
Facsimile: (408) 351-0114
Arusnak@rusnaklawoffice.com
Jrusnak@rusnaklawoffice.com

Attorneys for Plaintiffs MELANIE L. BALAJADIA,
BRIAN M. BADIOLA, MAY C. CABACUNGAN,
and VICTOR TURINGAN

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELANIE L. BALAJADIA, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>HELPING HANDS RESIDENTIAL CARE HOME, INC.; *et al.*<br><br>Defendants. | Case No. 5:21-cv-00616-NC<br><br>**DECLARATION OF ALEXANDER S. RUSNAK IN SUPPORT OF COURT'S APPROVAL OF SETTLEMENT OF FLSA AND PAGA CLAIMS.**<br><br>Date: December 1, 2021<br>Time: 1:00 p.m.<br>Courtroom: 5<br>Judge: Honorable Nathanael M. Cousins<br><br>Complaint Filed: January 26, 2021<br>FAC Filed: March 8, 2021 |

I, Alexander S. Rusnak, declare as follows:

1.  I am one of the attorneys of record in this case. I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, I could and would testify thereto.

2.  I am submitting this declaration to provide the factual basis for our recommendation to approve the settlement reached under the Private Attorneys General Act, Cal. *Labor Code* § 2698 *et. seq*. ("PAGA") 29 U.S.C. §§ 206, 207 and 216(b) of the Fair Labor Standards Act. This motion and a

**DECLARATION OF ALEXANDER S. RUSNAK**

copy of the proposed settlement, which is attached as Exhibit A, were submitted to the State of California, Labor and Workforce Development Agency ("LWDA") through their online PAGA submission portal.

3. I am providing this declaration on three issues: (1) the investigation into this case and my opinion as to the value of this case; (2) my experience in wage and hour employment law; and (3) my view on the settlement, including the settlement amount and the PAGA apportionment.

**Procedural History**

4. On December 29, 2020, I electronically filed on behalf of Plaintiffs MELANIE L. BALAJADIA, BRIAN M. BADIOLA, MAY CLAIRE V. CABACUNGAN and VICTOR TURINGAN, a notice with the Labor & Workforce Development Agency ("LWDA") pursuant to *Labor Code* § 2699.3 stating the alleged *Labor Code* violations Plaintiff and other aggrieved employees suffered by Defendant employers and other responsible individuals as well as the factual basis of the stated violations. A true and correct copy of the notice sent to the LWDA and to Defendants via certified mail with return receipt is attached as Exhibit B. The LWDA did not respond to the notice sent.

5. On January 26, 2021, I filed on behalf of Plaintiffs, against Defendants, a civil complaint with this Court alleging various violations under the Fair Labor Standards Act and California's *Labor Code* Plaintiffs suffered by Defendants.

6. On March 8, 2021, I filed on behalf of Plaintiffs a First Amended Complaint that included a claim under Labor Code § 2698 *et seq*. for violations alleged in the December 29, 2020, notice sent to the LWDA and Defendants.

**Investigation**

7. On June 11, 2019, Parties exchanged initial disclosures.

8.  On June 17, 2021, Plaintiff Propounded Written Discovery in the form of interrogatories, requests for production, and requests for admission. Defendants responding to Plaintiffs' discovery and produced pay and time records of both Plaintiffs and other workers pursuant to the Court's Protective Order Re: Confidential Information.

9.  On July 16, 2021, Defendants propounded written discovery in the form of interrogatories, requests for production, and requests for admission.

10. On September 24, 2021, the Parties participated in a mediation session with Jeffrey Wohl, who was appointed mediation by the Court pursuant to the Parties' agreement to participate in the Court's ADR program.

11. Through the course of mediation, the Parties reached the resolution outlined in the settlement agreement attached, a resolution that is conditioned on the Court's approval.

12. Plaintiffs counsel reviewed all of the Defendants' employee time and pay records for the one-year statute of limitation period covered under Plaintiffs' PAGA claims.

13. After reviewing Defendants' discovery responses and documents produced and informally conferring with Defendants' counsel, five caregivers (5), four of which are Plaintiffs, that worked at both the JTCN, Inc. facility and Helping Hands Residential Care Home, Inc. facilities.

14. Upon review of Plaintiffs' time and pay records, I conducted an audit of the hours worked and wages received by Plaintiffs from Defendants. Without waiving the attorney-work product doctrine and attorney-client privilege, my review of Plaintiffs records indicate that 1) Defendants paid each of the Plaintiffs a large "catch up" payment equal to one-half of each Plaintiff's regular rate of pay for hours worked in excess of forty in a workweek upon their termination; 2) Defendants' calculations for overtime wages owed were enough to cover Plaintiffs' overtime premiums under the FLSA for hours worked in excess of forty hours in a workweek per my audit of time and pay records, with a little extra (ranging from $89-$3,200 per my audit); 3) While

**DECLARATION OF ALEXANDER S. RUSNAK**

Defendants payments were sufficient to cover unpaid FLSA overtime claims, they were not sufficient to cover overtime claims alleged under California's *Labor Code* for overtime and double overtime.

### Counsel's Experience in Wage and Hour Litigation and Time Records

15.  I graduated from Santa Clara University School of Law in 2014 and was admitted to the California Bar that year. Since admitted, I have handled matters in the area of Consumer Rights, such as unlawful debt collection practices and breaches of warranty, and Employee Rights, such as wage-and-hour litigation and unlawful discrimination. Below are a few of my more recent matters that required approval of PAGA claims.

16. On June 11, 2020, in the matter of *Michael Gruhlke v. Atilekt, Inc. et al.* (Santa Clara County Court Case # 19CV341870), The Honorable Socrates P. Manoukian issued an Order approving the settlement of Plaintiff's PAGA claim for $124,859.30 in civil penalties (of a $215,727.34 gross settlement excluding attorneys fees), which represented approximately 90% of Plaintiff's PAGA claim for four workers who had been misclassified as independent contractors.

17. On November 4, 2020, in the matter of *Diego Gonzalez v. Golden State Granite, Inc. et al.* (Contra Costa Superior Court Case No. MSC19-01703) Golden state, the Honorable Edward E. Weil Judge issued an Order approving the settlement of Plaintiff's PAGA claim for $41,000.00 based upon a PAGA claim with a maximum value of $61,000.00.

18. Based upon my knowledge of rates for attorney services and prior awards for reasonable attorneys fees, my hourly rate is $350.00 per hour.

19.  Jennifer L. Rusnak, co-counsel in this matter, was admitted to the California Bar in 2006 and had been practicing since. Ms. Rusnak's hourly rate is $450.00 per hour.

20. Plaintiffs' counsel represented Plaintiffs on a contingent basis and advanced all costs associated with litigation.

**DECLARATION OF ALEXANDER S. RUSNAK**

21. The firm's practice is to maintain contemporaneous time records for hours worked. I have reviewed these records fees generated and costs incurred are listed in the table below.

| ATTORNEY | RATE | HOURS | Total |
|----------|------|-------|-------|
| Alexander S. Rusnak | $350.00 per hour | 108.0 | $37,800.00 |
| Jennifer L. Rusnak | $450.00 per hour | 10.8 | $4,860.00 |
| Costs | | | $989.78 |
| **TOTAL** | | | **$43,649.78** |

22. Plaintiffs' Counsel's billing can be summarized as follows:

   a. Counsel spent 13.9 hours with Plaintiffs preparing for litigation, preparing Plaintiffs' notice to the LWDA, an initial complaint, and a First Amended Complaint.

   b. Counsel spent 19.5 hours communicating with Plaintiffs and opposing counsel, either telephonically, via email, or via videoconference to discuss the status of the matter, strategize or meet and confer as necessary through the course of litigation

   c. As this was a PAGA action that involved employees of two companies, counsel reviewed the pay and time records of Defendants employees and prepared an audit for each of the four Plaintiffs' payroll records, and well as a Damages Model for Plaintiffs' PAGA claims. This involved 33.8 hours of attorney time.

   d. Counsel propounding written discovery, responding written discovery, and reviewing Defendants' responses to Plaintiffs' written discovery involved 17.9 hours of attorney time.

   e. Counsel spent 18.8 hours preparing for mediation, including the preparation of Plaintiffs mediation brief, preparing Plaintiffs for mediation, and finalizing the proposed settlement of claims post mediation.

   f. Counsel spent 14.9 hours preparing this Motion, Memorandum of Points and Authorities, and Supporting Declaration.

23. Court intervention, such as the resolution of discovery disputes were unnecessary as counsel for parties were able to resolve all issues through the meet and confer process due their productive relationship.

24. Further Plaintiffs seek to allocate the $989.78 for costs incurred:

| Cost | Amount |
|---|---|
| Plaintiffs' First Appearance Fee | $402.00 |
| PAGA Notice Submission Fee to LWDA | $75.00 |
| Process Server Fees | $239.00 |
| Printing Fees (employee records were produced electronically and were printed to facilitate review - 2075 pages) | $179.78 |
| Court Call (anticipated for hearing of this Motion) | $94.00 |
| **Total** | **$989.78** |

### Counsel Assessment of Settlement Terms

25. As shown in Exhibit A the proposed settlement for this case is for ONE HUNDRED AND FIFTEEN THOUSAND DOLLARS ($115,000.00). Of this amount TEN THOUSAND ($10,000.00) is attributed to PAGA penalties, THIRTY-NINE THOUSAND TWO HUNDRED AND EIGHTY-FOUR DOLLARS ($39,284.00) is allocated to attorneys fees and costs. SIXTY-FIVE THOUSAND SEVEN HUNDRED AND SIXTEEN DOLLARS ($65,716.00) will be paid to Plaintiffs for their individual claims, divided as stated in the proposed settlement agreement..

26. For context, the following are the underlying claims and allegations made by Plaintiff in this this case.  Defendants manages multiple care facilities for adults and juveniles who require assistance caring for themselves.  The individual Defendants managed two separate companies, Helping Hands Residential Care Homes, Inc., which operates three care facilities for adults and JTCN, Inc., which operates a care home for juveniles with behavior issues and who require constant supervision. Plaintiffs worked at facilities operated by both corporate defendants as care givers.

6

**DECLARATION OF ALEXANDER S. RUSNAK**

27. The thrust of Plaintiffs' complaint is that Defendants did not pay overtime premiums as mandated by the FLSA and California's *Labor Code*, as Defendants treated the two corporations as separate employers and did not calculate overtime premium pay based upon the total hours worked at each facility.  Additionally, Plaintiffs alleged that that they were not provided wage statements, rest breaks, and meal periods compliant with California's *Labor Code*. Plaintiffs also alleged that they were not reimbursed for expenses incurred commuting between care facilities while on duty, such as for the use of personal vehicles or costs incurred for using rideshare services such as Lyft and Uber. Finally, Plaintiffs alleged that they were wrongfully terminated by Defendants due to their complaints about Defendants overtime, rest break and meal period policies, as well as safety issues regarding Covid-19 safety measures.

28. Plaintiffs and other aggrieved workers' working conditions were, in part, regulated under Wage Order 5-2001. Wage Order 5-2001 provides for alternate polices for rest breaks and meal periods for care homes that provide 24-hour care to juveniles and senior adults, in certain situations and under certain conditions. These alternate provisions provide for the "on duty" meal periods and rest breaks that permit an employee to "generally supervise" a minor or senior who requires supervision while on a rest break or meal period without penalty.

29. Based upon my review of Plaintiffs' timesheet and payroll documents, as well as claims for backpay for wrongfully terminating Plaintiffs, the settlement agreement provides for the Plaintiffs individual recoveries. The table below reflects each Plaintiff's individual recovery as it relates to the claims alleged. The column AMOUNT refers to their portion of the settlement funds; TOTAL CLAIM is the amount alleged to be owed for all alleged violations, FLSA and Labor Code, regardless of strength of claims--what is commonly referred to as "dripping wet". The FLSA CLAIM refers to Plaintiffs claim for liquidated damages for untimely payment of

**DECLARATION OF ALEXANDER S. RUSNAK**

overtime wages. The % of TOTAL CLAIM column reflects the % of Plaintiffs "TOTAL CLAIM recovered.

//
//
//

| PLAINTIFF | AMOUNT ALLOCATED | TOTAL CLAIM | FLSA CLAIM[1] | % of TOTAL CLAIM |
|-----------|-----------------|-------------|--------------|-----------------|
| Melanie L. Balajadia | $18,400.48 | $76,224.15 | $16,091.71 | 24% |
| Brian M. Badiola | $18,400.48 | $70,663.87 | $19,490.00 | 26% |
| May Claire Cabacungan | $15,114.68 | $60,177.67 | $8,124.40 | 25% |
| Victor Turningan | $13,000.00 | $54,304,53 | $8,767.00 | 24% |
| TOTAL | $64,716.00 | $207,065.69 | $52,473.11 | |

30. Plaintiffs' claims varied amongst each other not only in overtime compensation, as to expenses incurred, backpay based upon their ability to find suitable replacement employment. As such, without waiving the attorney-client privilege, the allocations in the settlement agreement reflect such variations and were agreed upon by Plaintiffs.

31. As to Plaintiffs PAGA penalties calculations, each worker was paid semi-monthly, for 24 pay periods for each of the five aggrieved workers. Plaintiffs strongest PAGA claims, should the two corporations be viewed as a single employer for overtime calculation purposes are below. The civil penalty calculation total is $42,000.00 and is based upon the maximum amount provided by the *Labor Code*:

    a.   *Labor Code* § 204 (failing to pay all wages due twice each calendar month or more frequently) - $100 per pay period per worker x 5 workers x 24 pay periods = $12,000.00

---

[1] FLSA liquidated damages for untimely payment of overtime wages.

**DECLARATION OF ALEXANDER S. RUSNAK**

    b.  *Labor Code* § 510 (failing to pay overtime for hours in excess of eight hours in a workday, forty hours in a workweek, and double overtime for hours worked in excess of twelve in a workday - $100 per pay period per worker x 5 workers x 24 pay periods = $12,000.00

    c.  *Labor Code* § 558 (civil penalty for violating any provisions regulating hours and pay under the Labor Code or an Order from the Industrial Welfare Commission) - $50 per pay period per worker x 5 workers x 24 pay periods = $6,000.00.

    d.  *Labor Code* § 2802 (failing to reimburse expenses incurred while performing job duties, in the case at hand, rideshare fees or mileage for the use of a personal vehicle) - $100 per pay period per worker x 5 workers x 24 pay periods = $12,000.00.

32. As to the calculation of all civil penalties alleged in Plaintiffs LWDA notice, including *Labor Code* § 98.6's $10,000.00 civil penalty for retaliating against an employee for complaining about the terms and conditions of employment, Plaintiffs' calculation of maximum civil penalties for the above five aggrieved employees would amount to $19,750 for each of the named Plaintiffs and $11,300.00 for the other aggrieved employee who was not subject to termination, for a total of $90,300.00.

33. The allocation of $10,000.00 to civil penalties amounts to a recovery of 23.8% of strongest PAGA claims, and 11% of all PAGA claims alleged.

34.  In my experience, the likelihood prevailing on the issues of 1) the two corporate employers should be viewed as a single employer for overtime and cost reimbursement purposes; 2) Whether compliant rest breaks and meal periods were provided under standard employment conditions or the more lenient alternate conditions for care facilities outlined in Wage Order 5-2001; 3) whether Plaintiffs were retaliated against for complaining about Defendants working

**DECLARATION OF ALEXANDER S. RUSNAK**

conditions rather for "job abandonment"; were a factor in reaching the proposed settlement terms.

35. It is my opinion that the amount of the proposed settlement, coupled with the parties' interest to promptly resolve this matter and to avoid further litigation costs for an uncertain result, is a fair and reasonable resolution to the claims asserted. The relative amounts recovered as to individual claims and PAGA penalties that have been recovered in other matters.

36. This settlement was reached through the aid of a Court-appointed mediator. Plaintiffs individual claims and core PAGA claims were similarly compromised at approximately 24% of their claims.

I declare under penalty of perjury under the laws of California that the forgoing is true and correct.

Dated: October 27, 2021

_____
Alexander S. Rusnak

**DECLARATION OF ALEXANDER S. RUSNAK**

EXHIBIT A

# RUSNAK LAW OFFICE

1001 Molalla Avenue, Suite 221
Oregon City, Oregon 97045
Phone: (408) 780-9835
Fax: (408) 351-0114

Alexander S. Rusnak
ARUSNAK@RUSNAKLAWOFFICE.COM

Jennifer L. Rusnak
JRUSNAK@RUSNAKLAWOFFICE.COM

December 29, 2020

**Via Electronic Submission and Certified Mail, Return Receipt**

California Labor and Workforce Development
Agency
Attn. PAGA Administrator
1515 Clay Street, Ste. 801
Oakland, CA 94612
(Electronic Submission)

Helping Hands Residential Care Home, Inc.
JTCN, Inc. dba Helping Hands for Children
Attn: Rowena Caling Nguyen or Thanh Nguyen
3072 Centerwood Way
San Jose, CA 95148

**RE: MELANIE BALAJADI ET AL. V. HELPING HANDS RESIDENTIAL CARE HOME, INC.  ET AL. LAB. CODE § 2699.3 CLAIM NOTICE.**

Dear Sir or Madam:

Please be advised that Melanie L. Balajadia, Brian M. Badiola, May C. Cabacungan, and Victor Turingan (collectively "Aggrieved Plaintiffs") have retained the RUSNAK LAW OFFICE to represent them and other aggrieved employees for wage and hour claims against their former employers, Helping Hands Residential Care Home, Inc.; JTCN, Inc. dba Helping Hands Home for Children; Rowena Caling Nguyen dba Helping Hands Residential Care Home for Adults and Thanh Nguyen dba  Helping Hands Residential Care Home for Adults (hereinafter referred to collectively as "Helping Hands").  Helping Hands are California Corporations located in California that employ caregivers in their assisted living facilities.  Helping Hands has failed to pay them a minimum wage for all hours worked, overtime as required by law and failed to provide complaint rest breaks and meal periods.

Helping Hands has violated, or has caused to be violated, several Labor Code provisions, and is therefore liable for civil penalties under California Labor Code § 2698 *et seq*.  We request that your agency

investigate the claims alleged against it below. This letter will serve as notice of these allegations pursuant to the Private Attorney Generals Act of 2004 ("PAGA"). Cal. Lab. Code § 2699.3.

## Unlawful Failure to Pay Overtime

Helping Hands has failed to maintain a policy that compensates Helping Hands' caregivers for all hours worked, including overtime. Specifically, Helping Hands only pays Helping Hands' caregivers a regular rate of pay for all hours worked, without overtime premiums. Further, Helping Hands employs caregivers who work at multiple Helping Hands locations. Helping Hands maintains the unlawful practice of treating hours worked at each location as separate "employment" to avoid paying overtime premiums for hours worked over 8 in a workday and forty in a workweek. Caregivers routinely work over eight hours in a workday or forty hours in a workweek and are not paid one and one-half, or twice their regular rate when applicable, their regular rate of pay for overtime.

As a result of violations of California Labor Code §§ 510, 1194, and Industrial Welfare Commission Wage Orders 5-2001 for failure to pay overtime, Helping Hands is liable for civil penalties according to California Labor Code §§ 558 and 2698 *et seq.*

## Unlawful Failure to Provide Unpaid Balance of Full Amount of Overtime Compensation

As described above, Helping Hands has required Helping Hands' caregivers to work hours in excess of eight hours in a day and forty in a week but has not paid these employees overtime compensation. As a result, Helping Hands' caregivers have been denied "the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon" as required by California Labor Code § 1194, and Helping Hands is liable for civil penalties according to California Labor Code § 2698 *et seq.*

## Unlawful Failure to Pay Minimum Wage

Helping Hands has failed to maintain a policy that compensates Helping Hands' caregivers an amount equal to or greater than the minimum wage for all hours worked, as required by California Labor Code §§ 1194, 1197, 1197.1 and Industrial Welfare Commission Wage Orders 5-2001. Helping Hands employed caregivers who worked at multiple locations, frequently leaving one facility to work at

another facility immediately. Helping Hands failed to compensate Aggrieved Plaintiffs and other aggrieved workers for such compensable travel time.

As a result of Helping Hands' violations of California Labor Code §§ 1194, 1197, 1197.1 and Industrial Welfare Commission Wage Order 5-2001 and Labor Code § 1454 for failure to pay minimum wage, Helping Hands is liable for civil penalties pursuant to California Labor Code §§ 558, 1197.1, and 2698 *et seq.*

### Unlawful Failure to Provide Uninterrupted Off-Duty Meal Periods

Helping Hands has failed to maintain a policy that provides Helping Hands' caregivers with off-duty meal periods as required by California law. Helping Hands maintained a policy requiring Aggrieved Plaintiffs and other aggrieved workers to always supervise Helping Hands' clients, requiring Aggrieved Plaintiffs and other aggrieved employees to eat while on duty. Aggrieved Plaintiffs and aggrieved employees regularly worked more than five (5) hours a day without being provided at least half-hour meal periods in which they were relieved of all duties, as required by Labor Code §§ 226.7, 512, and Wage Order 5-2001. Helping Hands failed to pay their caregivers the premium compensation mandated by Labor Code § 226.7(b) for these missed meal periods. As a result of violations of California Labor Code §§ 226.7 and 512 and Wage Orders 5-2001, Helping Hands is liable for civil penalties pursuant to California Labor Code §§ 558 and 2698 *et seq.*

### Unlawful Failure to Provide Uninterrupted Off-Duty Rest Periods

Helping Hands has failed to maintain a policy that provides Helping Hands Car washers with off-duty rest periods as required by California law. Aggrieved Plaintiffs and similarly situated caregivers employed by Helping Hands regularly worked in excess of four hours or major fraction thereof during workdays without being provided at least a ten-minute rest period in which they were relieved of all duties, as required by Labor Code §§ 226.7,512 and Wage Order 5-2001. Helping Hands failed to pay their caregivers the premium compensation mandated by Labor Code § 226.7(b) for these missed rest periods. As a result of violations of California Labor Code §§ 226.7, 512 and Wage Order 5-2001, Helping Hands is liable for civil penalties pursuant to California Labor Code §§ 558 and 2698 *et seq.*

### Unlawful Failure to Furnish Wage Statements

Helping Hands has violated California Labor Code § 226(a) by willfully failing to furnish Helping Hands' caregivers with accurate, itemized wage statements showing the actual hours worked and wages earned.  When Helping Hands compensated Aggrieved Plaintiffs and other aggrieved employees, it did not accurately show the hours worked and wages earned by Helping Hands' caregivers. As a result of violations of California Labor Code § 226(a), Helping Hands is liable for civil penalties pursuant to California Labor Code Labor Code §§ 226.3 and 2698 *et seq.*

### Unlawful Failure to Keep Accurate Payroll Records of Daily Hours Worked

Helping Hands has failed to keep accurate payroll records showing total hours worked and wages paid to employees.  Under California Labor Code § 1174(d), employers must keep "payroll records showing the hours worked daily by and the wages paid to ... employees [...]." Because Helping Hands did not keep accurate time records reflecting hours worked for Helping Hands' caregivers, it is liable for civil penalties according to California Labor Code § 2698 *et seq*.  To the extent of Helping Hands' failure to keep accurate payroll records was willful, it is liable for civil penalties under California Labor Code § 1174.5.

### Unlawful Violation of California Labor Code § 1199

Under California Labor Code §§ 1199(a) and (c) and 2699.5 *et seq*., an employer who "requires or causes any employee to work for longer hours than those fixed" or "violates or refuses or neglects to comply with any provision of the Labor Code regarding employees' wages, hours, and working conditions, is subject to PAGA penalties.  As described above, Helping Hands has required Helping Hands' caregivers to work hours in excess of eight (8) hours in a day and forty (40) hours in a week (thereby violating § 1199(a)) and has violated numerous provisions of the Labor Code pertaining to employee wages and hours (thereby violating §1199(b)).  Accordingly, Helping Hands is liable for civil penalties pursuant to California Labor Code § 2698 *et seq.*

### Unlawful Failure to Pay All Wages Twice Each Calendar Month

Upon information and belief, Helping Hands failed to properly compensate Helping Hands' caregivers for all hours worked, including those in excess of eight (8) in a day and forty (40) in a week, as well as for missed meal periods.  Accordingly, Helping Hands violated California Labor Code § 204(a), which requires that employers pay "all wages [...] twice during each calendar month on days designated in advance by the employer

as the regular paydays" (emphasis added).  As a result, Helping Hands is liable for civil penalties pursuant to California Labor Code § 2698 et seq.

**Failure to Enforce Maximum Hours of Work**

Additionally, Helping Hands failed to enforce the maximum hours of work fixed by the Industrial Welfare Commission with respect to Helping Hands' caregivers as required by California Labor Code § 1198, Helping Hands is liable for civil penalties pursuant to California Labor Code § 2698 *et seq.*

**Causing Employees to Work More Than Six Days in Seven**

Helping Hands caused their employees to work more than six days in seven in violation of Labor Code §552. Helping Hands is liable for civil penalties pursuant to California Labor Code § 2698 *et seq.*

**Unlawful Failure to Pay Wages due Upon Termination**

Helping Hands violated California Labor Code §§ 201 and 202 by willfully failing to pay all compensation due and owing to all former Helping Hands caregivers at the time employment was terminated. Helping Hands willfully failed to pay Helping Hands' caregivers who are no longer employed by it all compensation due upon termination of employment as required under California Labor Code §§ 201 and 202. Pursuant to §§ 203 and 256 of the Labor Code, Aggrieved Plaintiffs and similarly situated individuals are now also entitled to recover up to thirty (30) days of wages due to Defendant's "willful" failure to comply with the statutory requirements of sections 201 and 202 of the Labor Code.  Additionally, because Helping Hands violated California Labor Code §§ 201,201 and 203 of the Labor Code, Helping Hands is liable for civil penalties pursuant to California Labor Code § 2698 *et seq.*

**Violation of Labor Code §2810.5**

Helping Hands, in violation of Labor Code § 2810.5, failed to provide their caregivers at the time of hiring, a written notice, in the language the employer normally uses to communicate employment-related information to the employee, containing the following information:

(A) The rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, as applicable.

(B) Allowances, if any, claimed as part of the minimum wage, including meal or lodging allowances.

(C) The regular payday designated by the employer in accordance with the requirements of this code.

(D) The name of the employer, including any "doing business as" names used by the employer.

(E) The physical address of the employer's main office or principal place of business, and a mailing address, if different.

(F) The telephone number of the employer.

(G) The name, address, and telephone number of the employer's workers' compensation insurance carrier.

(H) That an employee: may accrue and use sick leave; has a right to request and use accrued paid sick leave; may not be terminated or retaliated against for using or requesting the use of accrued paid sick leave, and has the right to file a complaint against an employer who retaliates.

(I) Any other information the Labor Commissioner deems material and necessary.

Helping Hands is liable for civil penalties pursuant to California Labor Code § 2698 *et seq.*

## **Violation of Labor Code §98.6**

Helping Hands, in violation of California Labor Code §§ 232, 232.5 and 98.6, has discriminated, retaliated, or taken adverse action against Aggrieved Plaintiffs for complaining about Helping Hands working conditions, such as lack of rest breaks and meal periods and failing to pay overtime wages. Subsequent to Aggrieved Plaintiffs bringing concerns to Helping Hands about their rest break, meal period, and overtime policies, Helping Hands terminated Aggrieved Plaintiffs. Further, when Helping Hands employees tested positive for COVID-19, Aggrieved employees expressed their concern regarding workplace safety. Aggrieved Employees asked that they be tested to minimize the spread of COVID-19 and not report to work until the test results were reported. Helping Hands terminated Aggrieved Plaintiffs.

In addition to other remedies sought, Aggrieved Plaintiffs seek a civil penalty not exceeding ten thousand dollars ($10,000.00) per employer for each violation of this section. Helping Hands is liable for civil penalties pursuant to California Labor Code § 2698 *et seq.*

## **Conclusion**

Helping Hands has violated or has caused to be violated a number of California wage and hour laws. Aggrieved Plaintiffs requests the agency investigate the above allegations and provide notice of the allegations pursuant to PAGA's provisions. Alternatively, Aggrieved Plaintiffs requests the agency

inform her if it does not intend to investigate these violations so that she may amend her lawsuit to include the violations discussed in this letter.

Yours truly,

Alexander S. Rusnak
Attorney for that Melanie L. Balajadia,
Brian M. Badiola, May C. Cabacungan,
and Victor Turingan

EXHIBIT B

# CONFIDENTIAL SETTLEMENT AGREEMENT

This Confidential Settlement Agreement is entered into on the date executed by the parties in furtherance of the Memorandum of Understanding made as of the 24th day of September 2021. The parties to this Agreement are MELANIE L. BALAJADIA, BRIAN M. BADIOLA, MAY CLAIRE V. CABACUNGAN and VICTOR TURINGAN (referred to herein as "Plaintiffs"), on the one hand, and Defendant HELPING HANDS RESIDENTIAL CARE HOME, INC.; JTCN, INC. dba HELPING HANDS FOR CHILDREN (referred to herein as "Defendants") on the other hand. Plaintiffs and Defendants are collectively referred to herein as "the Parties" regarding the agreed upon resolution between the parties.

## RECITALS

WHEREAS, Plaintiffs filed a lawsuit against Defendants, HELPING HANDS RESIDENTIAL CARE HOME, INC. and JTCN, INC. dba HELPING HANDS FOR CHILDREN, and individuals ROWENA CALING NGUYEN, and THANH NGUYEN, in the United States District Court for the Northern District of California, Case number 5:21-CV-00616-NC (referred to herein as "the Action").

WHEREAS, Defendants and Releasees dispute and deny Plaintiffs' claims.

WHEREAS, The Parties now desire to settle fully and finally all of the claims that were or could have been asserted in the Action and all other differences between them.

NOW THEREFORE, in consideration of the promises and mutual covenants and agreements contained herein, and for other good and valuable consideration, receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1.   Settlement Payment.

In exchange for the promises and obligations herein contained, Defendants shall pay to Plaintiffs the total Settlement Payment of $115,000.00 (One Hundred Fifteen Thousand Dollars), of which $10,000 (Ten Thousand Dollars) is designated for the resolution of the PAGA claims alleged in the Action. Plaintiffs will provide specific allocations between W2 and 1099 to each Plaintiff and 1099 to Plaintiffs' counsel.

(a) Each party shall bear its/their own attorneys' fees and costs except as allocated in the Settlement Payment.

(b) The Settlement Payment minus $10,000 for the PAGA allocation shall be paid as follows:

(a) To MELANIE L. BALAJADIA:

i. $2,400.48 payable minus applicable withholdings, and subject to a W2, for alleged unpaid wages;

    ii. $16,000.00 payable without deductions, and subject to a 1099, for alleged penalties and interest, and to secure the releases and other obligations in this agreement;

(b) To BRIAN M. BADIOLA:

    i. $2,400.48 payable minus applicable withholdings, and subject to a W2, for alleged unpaid wages;

    ii. $16,000.00 payable without deductions, and subject to a 1099, for alleged penalties and interest, and to secure the releases and other obligations in this agreement;

(c) To MAY CLAIRE V. CABACUNGAN:

    i. $1,114.68 payable minus applicable withholdings, and subject to a W2, for alleged unpaid wages;

    ii. $14,000.00 payable without deductions, and subject to a 1099, for alleged penalties and interest, and to secure the releases and other obligations in this agreement;

(d) To VICTOR TURINGAN:

    i. $800.36 payable minus applicable withholdings, and subject to a W2, for alleged unpaid wages;

    ii. $13,000.00 payable without deductions, and subject to a 1099, for alleged penalties and interest, and to secure the releases and other obligations in this agreement;

(e) To the RUSNAK LAW OFFICE:

    i. $39,284.00 payable without deductions, and subject to a 1099, for alleged attorneys' fees and costs.

(c) All payments are conditioned on Plaintiffs completed and signed W-4 and W-9 forms, and Plaintiffs' counsel provided a completed and signed W-9 form.

(d) $10,000 of the Settlement Payment, or such other amount as the court may order, will be paid as PAGA allocation as follows:

(a) $7,500 to the Labor Workforce Development Agency;

(b) $500.00, without deductions, and subject to a 1099, to MELANIE L. BALAJADIA;

(c) $500.00, without deductions, and subject to a 1099, to BRIAN M. BADIOLA

(d) $500.00, without deductions, and subject to a 1099, to MAY CLAIRE V. CABACUNGAN;

(e) $500.00, without deductions, and subject to a 1099, To VICTOR TURINGAN;

(f) $500.00, without deduction, and subject to a 1099, to the other employee who worked for both defendants during the PAGA period and who allegedly did not timely receive overtime.

The following terms will be included in the final agreement:

2.    <u>Approval of PAGA settlement/allocation and FLSA waiver</u>.

a.   On or before October 13, 2021, counsel for Plaintiffs will file a motion with the court seeking approval of the PAGA settlement/allocation and approval of Plaintiffs' waiver of claims under the Fair Labor Standards Act. Counsel for Defendants will provide reasonable assistance, including providing a declaration if needed.

b.   Counsel will endeavor to maintain the confidentiality of this Agreement and the MOU, but may divulge such terms and conditions to the court as the court may determine is necessary to evaluate and approve the settlement/allocation.

c.   Approval of the court on this motion is an integral part of this Agreement. If the court rejects the PAGA allocation on the grounds that the amount allocated is insufficient, the parties will work together to determine a new allocation of the total Settlement Sum, but the total Settlement Sum will not increase.

d.   This agreement shall only become enforceable and binding if the Court grants approval of the FLSA waiver; if Court approval of the FLSA waiver is denied, then this entire settlement is null and void, and parties agree it is inadmissible in any court, administrative agency, or tribunal for any purpose whatsoever, and the parties will engage Jeffrey Wohl to continue the mediation.

e.   If the court refuses to approve the PAGA allocation, or such other PAGA allocation to which the parties may agree, Defendants will pay the Settlement Sum minus the PAGA allocation and Plaintiffs will ask the court to dismiss Plaintiffs' non-PAGA claims

3.    <u>Dismissal of Action</u>.

When the final Settlement Payment has been received by Plaintiffs' counsel, Plaintiffs will cause to be filed and served a full dismissal with Prejudice of the Complaint of the Action of all parties and all causes of action.

4.    <u>No Admission of Liability</u>.

This Agreement is entered into in compromise of disputed claims. Plaintiffs acknowledge that the execution of this Agreement and the payment of the amounts hereunder are not and shall not be construed in any way as an admission of wrongdoing or liability on the part of the Defendants or Releasees, or any other person or business entity. Plaintiffs further acknowledges that Defendants and Releasees deny all allegations of wrongdoing alleged in the Action. The Parties intend, by this Agreement, merely to avoid the expense, delay, uncertainty, and burden of litigation.

5.     Release of All Claims.

In exchange and except for the consideration identified above, Plaintiffs, on behalf of themselves, their heirs, executors and assigns agree to and hereby do absolutely, forever and fully, generally and specifically, release and discharge Defendants HELPING HANDS RESIDENTIAL CARE HOME, INC. and JTCN, INC. dba HELPING HANDS FOR CHILDREN, and individuals ROWENA CALING NGUYEN, and THANH NGUYEN, and each of their agents, associates, independent contractors, employees, employers, directors, officers, shareholders, partners, joint ventures, subsidiaries, successors or predecessor entities, estates, representatives, executors, administrators, attorneys, insurers, heirs, executors and assigns ("Releasees") from any and all claims, contentions, rights, debts, liabilities, demands, accounts, obligations, duties, promises, costs, expenses (including, but not limited to, attorneys' fees), liens, subrogation rights, indemnification rights, damages, losses, actions, and causes of action, of any kind whatsoever, whether due or owing in the past, present or future and whether based upon federal, state, or local contract law, tort law, statute, or any other legal or equitable theory of recovery, and whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, with respect to, pertaining to, or arising from any matters, acts, omissions, events, conduct or occurrences at any time prior to the date of this Agreement including, without limiting the generality of the foregoing provisions, any and all causes of action, claims, or remedies referred to or based upon the facts alleged in the Complaint filed in the subject Action.

Plaintiffs further promise and agree that Plaintiffs will not participate, assist, or cooperate in any claims by third parties against Defendants or Releasees, whether before a court, arbitrator, or administrative or government agency, unless required to do so by a lawful subpoena, court order, or other law, and understands and agrees that a breach of this promise will constitute a material breach of this Agreement. Plaintiffs further promise and agree that Plaintiffs shall not accept damages of any nature, or other equitable or legal remedies for Plaintiffs' own benefit, or attorneys' fees or costs from Defendants or Releasees with respect to any claim released by this Agreement, other than those which are set forth in this Agreement.

This Release includes, but is not limited to, all claims involving: wrongful or constructive termination, age discrimination, failure to indemnify, breach of contract, retaliation, assault, battery, infliction of emotional distress, cash shortages, missed meal periods, missed rest breaks, or wage and hour ordinances; all tort, statutory, contract and constitutional claims of any nature; all claims for pain and suffering; any claim under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (29 U.S.C. Section 621 *et seq.),* the Americans with Disabilities Act, the Employee Retirement Income Security Act, the National Labor Relations Act, the Fair Labor Standards Act (Cal. Labor Code Section 2698 *et seq.),* the Family and Medical Leave Act, the California Fair Employment and Housing Act, the California Constitution, the California Family Rights Act, the California Labor Code, the California Government Code, the California Business & Professions Code, the Older Worker's Benefit Act; any claims for job injuries; or any other federal, state, or local statute or regulation; or any claim for severance pay, bonus, sick leave, holiday pay, vacation pay, stock, stock options, phantom stock, life insurance, health and medical insurance or any other fringe benefit; costs and attorneys' fees; and any other claims, whether in law or equity, which Plaintiff asserts or could assert, at common law or under statute, rule, regulation, or order of law, whether federal, state, or local.

6.     Waiver of Civil Code Section 1542.

Plaintiffs hereby waive any and all rights or benefits under Section 1542 of the Civil Code of the State of California, which provides that:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Plaintiffs hereby represent and warrant that they understands the effect of this waiver, and Code section, and that they sought legal counsel for advice concerning this Agreement.

7.      Release of Unknown Claims.

Plaintiffs acknowledge that they may hereafter discover Claims and/or facts now unknown or unsuspected that existed as of the date this Agreement is executed, which are in addition to, or different from, those which the Parties now know or believe to be true with respect to the subject matter of this Agreement.  Nevertheless, Plaintiffs intend by this Agreement to release fully, finally, and forever all claims released hereby, including those stated in the Action.  Accordingly, this Agreement shall remain in full force as a complete release of such claims notwithstanding the discovery or existence of any such additional or different claims and/or facts before or after the date of this Agreement.

8.      Representation and Warranty by Releasing Parties.

Plaintiffs and Defendants represent and warrant to their respective Releasees that they: (i) are the lawful owners of all claims released here, (ii) have all necessary power and authority to make such release, including any necessary consent or approval from any person and including the absence of any duty or obligation that would prevent, or be put in breach or default by, such release, and (iii) have not heretofore transferred or attempted to transfer all or any part of any such thing released in any manner whatsoever, including by way of subrogation or operation of law.  The Parties, and each of them, shall indemnify and hold harmless their Releasees, and each of them, with respect to any liability, cost, expense, or claim with respect to, pertaining to, or arising from any assertion of any such obligation or transfer or lack of such power or authority including, but not limited to, reasonable attorneys' fees and costs.  The Parties, and each of them, represent and warrant further to their Releasees and each of them, that this Agreement is executed voluntarily and without duress or undue influence on the part of or on behalf of their Releasees or any other person or entity whatsoever.  The Parties, and each of them, represent that they have consulted with and been advised by their counsel of record in the Action with regard to this Agreement.

9.      Confidentiality except the extent necessary to obtain court approval of the PAGA settlement.

Plaintiffs agree to not disclose the fact of or the amount of this settlement, the terms and contents of this Agreement, and the negotiations leading thereto. Plaintiffs will take all reasonable efforts to instruct and direct any of his family members or others who are or may become aware of this Agreement not to publicize or disclose (directly or indirectly) such information to any person.  Notwithstanding this Paragraph, the Parties or their counsel may disclose the terms of this Agreement as follows:

(a) As required by the court in order to obtain the court's approval of the PAGA settlement/allocation and/or the FLSA waiver;

(b) in response to an order, disclosure requirement, or subpoena of a court of competent jurisdiction or as necessary to effectuate the terms of this agreement;

(c) in response to any inquiry or order issued by a governmental agency;

(d) in response to a request from the California State Bar;

(e) to the extent necessary to report income to appropriate taxing authorities, and in other related dealings with taxing authorities;

(f) to their legal, tax and financial advisors,

(g) to any persons with whom they file joint tax returns (if any), and

(h) in any action or proceeding brought to enforce this agreement.

In the event of an unsolicited inquiry, the Parties or their attorneys may choose not to respond or may respond only by stating, "The matter has been resolved." No other response (whether by words, gesture, expression, or otherwise) may be made to any such inquiries, including any follow-up inquiries.

In the event of a breach, the prevailing party shall be entitled to recover his/her reasonable attorney fees and costs in an action to enforce this provision.

10.    Mutual Non-Disparagement.

Plaintiffs agree not to make any disparaging remarks about Defendants or Releasees, whether written or oral (including electronic communication in any form). Individuals ROWENA CALING NGUYEN, and THANH NGUYEN agree not to make any disparaging remarks about Plaintiffs, whether written or oral (including electronic communication in any form). This paragraph does not prevent either party from providing truthful testimony if subpoenaed to testify.

11.    No Obligation to Re-Employ

Plaintiffs acknowledge and agree that Plaintiffs are no longer employed by Defendants and are not entitled to any benefits available to employees employed after the date they stopped working for Defendants. Plaintiffs acknowledge Defendants are not obligated to re-employ Plaintiffs, and that any request for re-employment may be denied for no reason.

12.    Neutral Reference.

In response to a written or verbal employment verification and/or reference inquiry on behalf of Plaintiffs from a prospective employer directed to ROWENA CALING NGUYEN or THANH NGUYEN, Defendants will only confirm Plaintiffs' employment with Defendants and provide Plaintiffs' job title and dates of employment.

13.    Binding Effect.

This Agreement and all documents referred to herein shall bind and inure to the benefit of each of the Parties hereto and the Releasees.

14.    Additional Representations and Warranties of the Parties.

The Parties, and each of them, further represent and warrant to each other that:

    a.    **Understanding of Agreement.**   The Parties understand and agree to this Agreement and the terms and conditions contained herein and, in the documents, referred to herein, and have relied upon their own judgment, belief, knowledge, understanding and expertise concerning the legal effect of this Agreement.

    b.    **Voluntary Resolution.**  The Parties enter into this Agreement and the documents referred to herein, knowingly and voluntarily, in the total absence of any fraud, mistake, duress, coercion, or undue influence and after careful thought and reflection upon this Agreement and the documents referred to herein; and accordingly, by signing this document and the documents referred to herein, they signify full understanding, agreement and acceptance.

    c.    **Investigation of Facts.**  The Parties have investigated the facts pertaining to this Agreement and all matters pertaining thereto as deemed necessary.

    d.    **Parties' Representations & Warranties.**  Aside from the Action, the Parties have not commenced or prosecuted, and will not commence or prosecute, any other action or proceeding for recovery of damages or for any form of equitable relief, declaratory relief or any other form of action or proceeding or arbitration against any Party or other person based upon the Claims released in this Agreement including, but not limited to, the Claims that are the subject of the Action.  This Agreement shall constitute a judicial bar to the institution of any such action or proceeding or any assignment thereof.

15.    Ambiguities or Uncertainties.

This Agreement and the documents referred to herein, and any ambiguities or uncertainties herein or therein, shall be equally and fairly interpreted and construed without reference to the identity of the Party or Parties preparing this document or the documents referred to herein, on the express understanding and agreement that the Parties participated equally in the negotiation and preparation of the Agreement and the documents referred to herein, or have had equal opportunity to do so and to consult with counsel of their choice. Accordingly, the Plaintiff waives the benefit of California Civil Code § 1654 and any successor or amended statute, providing that in cases of uncertainty, language of a contract should be interpreted most strongly against the Party who caused the uncertainty to exist.

16.    Attorneys' Fees to Prevailing Party in the Event of Breach of the Settlement Agreement.

In the event of a breach of any provision of this Agreement, any Party may institute an action specifically to enforce any term or terms of this Agreement, and the unsuccessful party to the Litigation shall pay to the prevailing party, in addition to any other relief that may be granted, all reasonable costs and expenses of the Litigation, including without limitation, the prevailing party's reasonable attorneys' fees and expenses, as awarded by any court of law.

17.    <u>California Law; Construction</u>.

This Agreement and the documents referred to herein, shall be governed by and construed and interpreted in accordance with the laws of the State of California.  In the language of this document and the documents referred to herein, the singular and plural numbers, and the masculine, feminine and neuter genders, shall each be deemed to include all others, and the word "person" shall be deemed to include corporations and every other entity, as the context may require.

18.    <u>Severability</u>.

In the event that any provision of this Agreement should be held to be void, voidable or unenforceable, the remaining portions hereof shall remain in full force and effect.

19.    <u>Multiple Counterparts; Execution by Facsimile, Electronic Signature Or PDF</u>.

This Agreement and any document referred to herein, may be executed in any number of counterparts, each of which may be deemed an original and all of which together shall constitute a single instrument.  Any Party may execute and/or deliver this Agreement by facsimile, electronic signature or PDF.

20.    <u>Waiver, Modification and Amendment</u>.

No breach of this Agreement or of any provision herein can be waived except by an express written waiver executed by the Party waiving such breach.  Waiver of any one breach shall not be deemed a waiver of any other breach of the same or other provisions of this Agreement.  This Agreement may be amended, altered, modified or otherwise changed in any respect or particular only by a writing duly executed by the Parties hereto or their authorized representatives.

21.    <u>Enforceability</u>.

The Parties specifically agree that (i) this Agreement is admissible as evidence and subject to disclosure in enforcement proceedings; (ii) this Agreement is binding and enforceable; (iii) all the material terms of the settlement agreement are set forth herein; and (iv) all Parties specifically waive any confidentiality privilege that may apply to this Agreement solely for purposes of its enforcement in a Court of law.

Having read, understood, and agreed to the foregoing Agreement, the Parties hereby voluntarily execute this Agreement by placing their signatures below.

Dated: _10/18/2021_____, 2021       By: _____
                                             MELANIE L. BALAJADIA

Dated: _____, 2021                By: _____
                                             BRIAN M. BADIOLA

Dated: _____, 2021                By: _____
                                             MAY CLAIRE V. CABACUNGAN

17.    <u>California Law; Construction</u>.

This Agreement and the documents referred to herein, shall be governed by and construed and interpreted in accordance with the laws of the State of California.  In the language of this document and the documents referred to herein, the singular and plural numbers, and the masculine, feminine and neuter genders, shall each be deemed to include all others, and the word "person" shall be deemed to include corporations and every other entity, as the context may require.

18.    <u>Severability</u>.

In the event that any provision of this Agreement should be held to be void, voidable or unenforceable, the remaining portions hereof shall remain in full force and effect.

19.    <u>Multiple Counterparts; Execution by Facsimile, Electronic Signature Or PDF</u>.

This Agreement and any document referred to herein, may be executed in any number of counterparts, each of which may be deemed an original and all of which together shall constitute a single instrument.  Any Party may execute and/or deliver this Agreement by facsimile, electronic signature or PDF.

20.    <u>Waiver, Modification and Amendment</u>.

No breach of this Agreement or of any provision herein can be waived except by an express written waiver executed by the Party waiving such breach.  Waiver of any one breach shall not be deemed a waiver of any other breach of the same or other provisions of this Agreement.  This Agreement may be amended, altered, modified or otherwise changed in any respect or particular only by a writing duly executed by the Parties hereto or their authorized representatives.

21.    <u>Enforceability</u>.

The Parties specifically agree that (i) this Agreement is admissible as evidence and subject to disclosure in enforcement proceedings; (ii) this Agreement is binding and enforceable; (iii) all the material terms of the settlement agreement are set forth herein; and (iv) all Parties specifically waive any confidentiality privilege that may apply to this Agreement solely for purposes of its enforcement in a Court of law.

Having read, understood, and agreed to the foregoing Agreement, the Parties hereby voluntarily execute this Agreement by placing their signatures below.

Dated: _____, 2021    By: _____
                                   MELANIE L. BALAJADIA

Dated: 10/18/2021 , 2021    By: _____
                                   BRIAN M. BADIOLA

Dated: _____, 2021    By: _____
                                   MAY CLAIRE V. CABACUNGAN

17.    <u>California Law; Construction</u>.

This Agreement and the documents referred to herein, shall be governed by and construed and interpreted in accordance with the laws of the State of California. In the language of this document and the documents referred to herein, the singular and plural numbers, and the masculine, feminine and neuter genders, shall each be deemed to include all others, and the word "person" shall be deemed to include corporations and every other entity, as the context may require.

18.    <u>Severability</u>.

In the event that any provision of this Agreement should be held to be void, voidable or unenforceable, the remaining portions hereof shall remain in full force and effect.

19.    <u>Multiple Counterparts; Execution by Facsimile, Electronic Signature Or PDF</u>.

This Agreement and any document referred to herein, may be executed in any number of counterparts, each of which may be deemed an original and all of which together shall constitute a single instrument. Any Party may execute and/or deliver this Agreement by facsimile, electronic signature or PDF.

20.    <u>Waiver, Modification and Amendment</u>.

No breach of this Agreement or of any provision herein can be waived except by an express written waiver executed by the Party waiving such breach. Waiver of any one breach shall not be deemed a waiver of any other breach of the same or other provisions of this Agreement. This Agreement may be amended, altered, modified or otherwise changed in any respect or particular only by a writing duly executed by the Parties hereto or their authorized representatives.

21.    <u>Enforceability</u>.

The Parties specifically agree that (i) this Agreement is admissible as evidence and subject to disclosure in enforcement proceedings; (ii) this Agreement is binding and enforceable; (iii) all the material terms of the settlement agreement are set forth herein; and (iv) all Parties specifically waive any confidentiality privilege that may apply to this Agreement solely for purposes of its enforcement in a Court of law.

Having read, understood, and agreed to the foregoing Agreement, the Parties hereby voluntarily execute this Agreement by placing their signatures below.

Dated: _____, 2021        By: _____
                                      MELANIE L. BALAJADIA

Dated: _____, 2021        By: _____
                                      BRIAN M. BADIOLA

Dated: 10/18/2021 ____, 2021        By: _____
                                      MAY CLAIRE V. CABACUNGAN

DocuSign Envelope ID: F04DB907-13C3-480E-A9B9-B04B299C6EC6

Dated: 10/18/2021 _____, 2021

By: _____
VICTOR TURINGA

Date: _____, 2021

By: _____
ROWENA CALING NGUYEN on behalf of
herself and HELPING HANDS
RESIDENTIAL CARE HOME, INC.;
JTCN, INC. dba HELPING HANDS FOR
CHILDREN

Date: _____, 2021

By: _____
THANH NGUYEN

Dated: _____, 2021

By: _____
VICTOR TURINGA


Date: _____Oct. 7_____, 2021

By: _____
ROWENA CALING NGUYEN on behalf of
herself and HELPING HANDS
RESIDENTIAL CARE HOME, INC.;
JTCN, INC. dba HELPING HANDS FOR
CHILDREN

By: _____
THANH NGUYEN

.